J-S42029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE DIAZ | : | |
| | : | |
| Appellant | : | No. 3044 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003429-2014

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 09, 2020**

Appellant, Jose Diaz, appeals from the judgment of sentence entered on
June 17, 2019, as made final by the denial of Appellant's post-sentence motion
on October 10, 2019.  We affirm.

The trial court ably summarized the underlying facts of this case:

> On December 9, 2013, Carol Ambruster returned to her home
> at 5501 Wayne Avenue, Apartment 201, in the City and
> County of Philadelphia a little before 6:00 p.m. When she
> opened the door, she was surprised by [Appellant], who got
> a knife from the kitchen and stabbed Ms. Ambruster eleven
> times in her face, neck and chest, finally shoving the blade
> into her neck so he could drag her into the kitchen and leave
> her to die.  . . .
>
> Daniel Sapon, the decedent's roommate[,] returned home
> before 9:00 p.m. and when he went to unlock the door he
> noticed it was unlocked.  Sapon pushed the door open, turned
> on the lights and saw blood everywhere, eventually finding
> his friend in a pool of blood on the kitchen floor.  He ran out
> of the apartment and found a fellow [tenant], a medical
> student[,] who called the police.  The police responded and

in addition to checking the roommate and med student for any blood splatter, they noticed [] bloody footprints and checked both individuals' shoes for any blood.

The police investigated and found that not only did the other tenants have keys for access to the building, Mr. Kurt Riexinger and [Appellant] were often employed to perform repair work at the complex. It was further determined that the Friday before this murder [Appellant], an employee of Kurt Riexinger's, was working at the apartment across the hall from Ms. Ambruster and that Riexinger had given [Appellant] the keys for access to the complex. Upon interviewing Riexinger, it was further learned that [Appellant] had not returned the access keys to his boss. Riexinger told [Appellant] that the police were going to interview him and [Appellant] returned the keys, telling [Riexinger] that [he was going to check himself into rehab and that, as a result, Riexinger would not be seeing him for a while].

The Crime Scene Unit determined that the bloody footprints were made by a size eight shoe. Appellant's shoe size is an eight. Police seized [Appellant's] recently cleaned boots and an analysis showed Carol Ambruster's DNA on the boots as well as a match of the treads to the crime scene. Additionally, on the back of the belt the decedent was wearing [had Appellant's] bloody fingerprints from where he [dragged] the decedent into the kitchen.

Trial Court Opinion, 11/20/19, at 3-4 (citations omitted).

A jury found Appellant guilty of first-degree murder, robbery, burglary, and possessing an instrument of crime.[1] On June 17, 2019, the trial court sentenced Appellant to serve a mandatory term of life in prison for the first-degree murder conviction, plus an aggregate term of 11 to 22 years in prison for the remaining convictions. The trial court denied Appellant's

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 3502(a)(1), and 907(a), respectively.

post-sentence motion on October 10, 2019 and Appellant filed a timely notice of appeal. Appellant raises three claims on appeal:

> [1.] Did the trial court err in denying the motion to suppress physical evidence?

> [2.] Was the evidence sufficient to sustain Appellant's conviction for all counts?

> [3.] Were the verdicts for all counts against the clear weight of the evidence?

Appellant's Brief at 4.

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable J. Scott O'Keefe. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge O'Keefe's November 20, 2019 opinion. Therefore, we affirm on the basis of Judge O'Keefe's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge O'Keefe's November 20, 2019 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/20

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :     CRIMINAL TRIAL DIVISION

                   :

Vs.                        :     3044 EDA 2019

                   :

JOSE DIAZ             :     CP-51-CR-0003429-2014

## O P I N I O N

**O'KEEFE, J.**

Jose Diaz appeals his sentence of incarceration for life with a consecutive eleven to twenty-two years' following his convictions for first degree murder, robbery, burglary and possessing the instrument of a crime. The defendant contends that there was insufficient evidence, the verdict was against the weight of the evidence and the motion to suppress was improperly denied.

## PROCEDURAL HISTORY:

Appellant was arrested on December 20, 2013, and charged with murder, robbery, burglary, theft and possessing the instrument of a crime. The defendant was held for court on all of the charges following a preliminary hearing on March 13, 2014.

A jury trial commenced from June 10th through June 17' 2019, resulting in a guilty verdict of murder in the first degree, robbery, burglary, and possessing the instrument of a crime. On the day the verdict was returned, appellant was sentenced life in prison without parole for first degree murder, a consecutive five to ten years' incarceration for burglary as well as robbery and a consecutive one to two years' imprisonment for possessing the instrument of a crime, for an aggregate

sentence of life plus eleven to twenty-two years' incarceration. Post-Sentencing Motions were filed and denied on October 10, 2019. A timely appeal was taken to the Superior Court.

## STANDARD OF REVIEW:

For a claim of insufficiency of the evidence an appellate court must view the evidence in a light most favorable to the Commonwealth as the verdict winner and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime beyond a reasonable doubt. *See Commonwealth v. McCalman*, 795 A.2d 412 (Pa.Super. 2002).

A claim that the verdict is against the weight of the evidence requires that the court examine the record to determine whether the fact finder's verdict was so contrary to the evidence as to shock one's sense of justice and thereby mandate the granting of a new trial. *Commonwealth v. Habay*, 934 A.2d 732 (Pa.Super. 2007), *appeal denied*, 598 Pa. 746, 954 A.2d 575 (2008). Whether or not a new trial should be granted on the grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court, whose decision will not be reversed absent a showing of an abuse of discretion. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994).

In evaluating a lower court's refusal to suppress evidence, the Pennsylvania Supreme Court has articulated that the scope of review is as follows:

> "When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error."

2

*Commonwealth v. Queen*, 536 Pa. 315, 319, 639 A.2d 443, 445 (1994) (citing *Commonwealth v. Cortez*, 507 Pa. at 532, 491 A.2d at 112). "If sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge." *Commonwealth v. Queen*, 536 Pa. 315 at 319, 639 A.2d at 445.

## FACTS:

On December 9, 2013, Carol Ambruster returned to her home at 5501 Wayne Avenue, Apartment 201, in the City and County of Philadelphia a little before 6:00 p.m. When she opened the door, she was surprised by the defendant, who got a knife from the kitchen and stabbed Ms. Ambruster eleven times in her face, neck and chest, finally shoving the blade into her neck so he could drag her into the kitchen and leave her to die. Daniel Sapon, the decedent's roommate returned home before 9:00 p.m. and when he went to unlock the door he noticed it was unlocked. Sapon pushed the door open, turned on the lights and saw blood everywhere, eventually finding his friend in a pool of blood on the kitchen floor. He ran out of the apartment and found a fellow tenet, a medical student who called the police. The police responded and in addition to checking the roommate and med student for any blood splatter, they noticed the bloody footprints and checked both individuals' shoes for any blood. (N.T. 6-11-2019, pp. 61-71, 88-91, 109-116).

The police investigated and found that not only did the other tenants have keys for access to the building, Mr. Kurt Riexinger and the defendant were often employed to perform repair work at the complex. It was further determined that the Friday before this murder, the defendant, Jose Diaz, an employee of Kurt Riexinger's, was working at the apartment across the hall from Ms. Ambruster and that Riexinger had given appellant the keys for access to the complex. Upon interviewing Riexinger, it was further learned that Diaz had not returned the access keys to his boss.

3

Riexinger told the defendant that the police were going to interview him and the defendant returned the keys, telling his boss that he wouldn't be seeing Diaz for a while because he was going to check himself into rehab. (N.T. 6-11-2019, pp. 167-186).

The Crime Scene Unit determined that the bloody footprints were made by a size eight shoe. Appellant's shoe size is an eight. Police seized the defendant's recently cleaned boots and an analysis showed Carol Ambruster's DNA on the boots as well as a match of the treads to the crime scene. Additionally, on the back of the belt the decedent was wearing are Diaz's bloody fingerprints from where he drug the decedent into the kitchen. (N.T. 6-11-2019, pp. 212-213; N.T. 6-13-2019, pp. 28-33, 211-215).

**LEGAL DISCUSSION**:

### Insufficiency of the Evidence

Appellant's first claim of error is that there was insufficient evidence presented at trial to find him guilty of any of the charges to which he was convicted. When evaluating a claim of insufficiency of the evidence, we must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). Further, the evidence must be viewed "in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Thomas,* 65 A.3d 939, 943 (Pa.Super. 2013) (citing *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007)).

Under a sufficiency of the evidence claim, "the Commonwealth may sustain its burden by

4

means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence." *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 517 (2005) (quoting *Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1211 (2003)). "Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bohonyi*, 900 A.2d 877, 881-882 (Pa.Super. 2006) (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa.Super. 2006)). However, if the evidence "is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Commonwealth v. Heater*, 899 A.2d 1126, 1131 (Pa.Super.2006) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)).

"To sustain a conviction for first-degree murder, the Commonwealth must prove that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the accused did the killing and that the killing was done with deliberation." *Commonwealth v. Simpson*, 562 Pa. 255, 265, 754 A.2d 1264, 1269 (2000) (citing *Commonwealth v. Hall*, 549 Pa. 269, 279-80, 701 A.2d 190,195 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998)); 18 Pa.C.S. §2502. First degree murder is a murder in which the perpetrator has the specific intent to kill. 18 Pa.C.S §2502. The murder in this case was willful, deliberate and premeditated. The specific intent to kill needed for first degree murder can be discerned from the conduct and attending circumstances, showing the perpetrator's state of mind. *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1976); *Commonwealth v. Gonzalez*, 858 A.2d 1219 (Pa.Super. 2004);

*Commonwealth v. Kaster*, 300 Pa.Super. 174, 446 A.2d 287 (1982). The evidence clearly established that this defendant

Not only was the evidence sufficient, it presents a textbook example of first degree murder. The defendant broke into Ms. Ambruster's apartment. When she returned home, he stabbed her multiple times, even shoving the knife in her throat to drag her body to the kitchen.

The Crimes Code, 18 Pa.C.S. § 3701 provides in part:

> Robbery.
> (a) Offense defined.
>    (1) A person is guilty of robbery if, in the course of committing a theft, he:
>       (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury . . .

Viewed in a light favoring the Commonwealth as the verdict winner, the defendant's stabbing Ms. Ambruster while in the midst of committing a theft is clearly a quintessential example of a robbery. When found, the contents of the decedent's purse were strewn about the room. (N.T. 6-11-2019, pp. 49-52). All the elements of robbery have been met. *Commonwealth v. Robinson*, 817 A.2d 1153 (Pa.Super. 2003); *Commonwealth v. Hurd*, 268 Pa.Super. 24, 407 A.2d 418 (1979).

To sustain a conviction for the crime of burglary, evidence of a forced entry into a structure does not *per se* give rise to a sufficient inference of an intent to commit a crime therein. *Commonwealth v. Wilamowski*, 534 Pa. 373, 633 A.2d 141 (1993). The prosecution must establish more than a mere break in to meet its burden. *Commonwealth v. Freeman*, 225 Pa.Super. 396, 313 A.2d 770 (1973). It has long been the law that mere presence, or flight from the scene is insufficient to support a conviction for burglary. *Commonwealth v. Lewis*, 276 Pa.Super. 451, 419 A.2d 544

(1980); *Commonwealth v. Goodman*, 465 Pa. 367, 350 A.2d 810 (1976); *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973). It is the totality of the circumstances that determines whether the defendant possessed the requisite intent to sustain a conviction for burglary. *Commonwealth v. Wilamowski, supra*. Entry, with even the intent to commit a summary offense inside, is a burglary. *In re Golden*, 243 Pa.Super. 267, 365 A.2d 157 (1976).

In the instant case, the defendant was inside the decedent's residence and viciously attacked Ms. Ambruster when she returned home, stabbing her numerous times and finally wedging a knife in her throat to drag her into the kitchen where she would bleed to death. The defendant had attacked Ms. Ambruster when she entered, taking any valuables in her purse after stabbing her multiple times. Clearly, this contention of insufficient evidence was properly denied.

Likewise, the defendant clearly of possessed an instrument of crime "with intent to employ it criminally" as defined under 18 Pa.C.S. § 907(a). He possessed a knife and used it to, unprovokedly stab and kill Carol Ambruster. That such usage is employing the instrument criminally is beyond dispute.

### *Weight of the Evidence*

A claim that the verdict was contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa. Super. 1997) (citing *Commonwealth v. Simmons*, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995)). A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so

7

contrary to the evidence as to make the award of a new trial imperative. *Commonwealth v. Mason,* 559 Pa. 500, 513, 741 A.2d 708, 715 (1999); *Commonwealth v. Auker,* 545 Pa. 521, 541, 681 A.2d 1305, 1316 (1996).

Addressing the defendant's weight of the evidence argument, it must be noted that "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court" *Commonwealth v. Rossetti,* 863 A.2d 1185, 1191 (Pa.Super.2004) (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751-752 (2000)). The Pennsylvania Supreme Court has explained that appellate review of a weight of the evidence claim is a review of the exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Id.* "A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v. Dupre,* 866 A.2d 1089, 1101 (Pa.Super.2005) (quoting *Commonwealth v. Sullivan,* 820 A.2d 795, 805-806 (Pa.Super.2003), *app. denied,* 574 Pa. 773, 833 A.2d 143 (2003) (emphasis omitted). A new trial should be awarded when the trial court believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Commonwealth v. Lloyd,* 878 A.2d 867, 872 (Pa.Super.2005) (citing *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (Pa 1985)). "Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (emphasis omitted). Stated another way, "the evidence must

8

be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (quoting *Commonwealth v. Sullivan, supra*, 820 A.2d at 805-806). "The question the trial court must answer, in the sound exercise of its discretion, is whether 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice'" *Id.* (citing *Commonwealth v. Widmer, supra*, 744 A.2d at 752). Because the trial judge heard and saw the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial court concerning a weight of the evidence determination. *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (citing *Commonwealth v. Widmer, supra*, 744 A.2d at 753). "A trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is 'one of the least assailable reasons for granting or denying a new trial.'" *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (citing *Commonwealth v. Sullivan, supra*, 820 A.2d at 806; *Commonwealth v. Widmer, supra*, 744 A.2d at 753). When the weight of the evidence challenge is predicated on the credibility of testimony presented at trial, appellate review of the trial court's decision is extremely limited. *Commonwealth v. Rossetti, supra*, 863 A.2d at 1191 (quoting *Commonwealth v. Hunter*, 381 Pa.Super. 606, 554 A.2d 550, 555 (1989)). "Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id.*

This court applied the appropriate standards when reviewing Defendant's claim that the verdict was against the weight of the evidence. Having reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits, this court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice. The evidence was not so tenuous, vague and uncertain that the verdict shocks the conscience of the court. To the contrary,

the evidence in this case was compelling and substantial, and strongly supported the verdict. Accordingly, this claim is without merit.

## Suppression of Evidence

The protection of privacy is the cornerstone of both the Fourth Amendment to the United States Constitution as well as Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Dougalewicz*, 113 A.3d 817, 824 (Pa.Super.2015) (citing *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1624, 18 L.Ed.2d 782 (1967); *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289, 292 (1998)). "[F]or a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search." *Dougalewicz, supra* (citing *Commonwealth v. Gary*, 625 Pa. 183, 91 A.3d 102, 107 (2014)). It is the Commonwealth's burden to establish, by a preponderance of the evidence that the challenged evidence was properly obtained and therefore admissible. *Commonwealth v. Wallace*, 615 Pa. 395, 407, 42 A.3d 1040, 1047-1048 (2012).

## Affidavit of Probable Cause

Defendant asserts that the suppression court erred in denying his motion to suppress the evidence obtained as a result of the search warrant, including the recovery of his cell phone records, contending that the warrant failed to provide adequate probable cause and that some of the facts contained in the warrant were obtained by an illegal arrest of Mr. Diaz. (N.T. 6/5/2017, p.4).

It has long been the law that in determining whether a search warrant application has sufficient probable cause, the court abides by the 'four corners' doctrine, that only evidence contained within the four corners of the affidavit may be considered to establish probable cause for the issuance of a warrant. *Commonwealth v. Edmunds*, 526 Pa. 374, 382, 586 A.2d 887, 891 (1991). The

10

reviewing authority may not consider any evidence not contained in the affidavit. Rule 203 of the Pennsylvania Rules of Criminal Procedure states:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits....
> (D) At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Search warrants should be read in a common sense fashion and not invalidated due to hyper-technical interpretations. *Commonwealth v. Melvin*, 103 A.3d 1, 18 (Pa.Super.2014) (citing *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1012 (2007), *cert. denied*, 522 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008)). As our courts have noted, "this may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Id.*

The affidavit of probable cause for the issuance of a search warrant for the residence of Jose and Angela Diaz for 135 W. Hansberry Street, Philadelphia, PA 19144, states:

> "On Monday, December 9th, 2013, at approx. 9:02PM, 14th District Police Officers responded to a radio call of a "Person Screaming" at 5501 Wayne Ave., Apt. #201. Upon arrival at that location the officers were met by Witness #1 who is known to the Commonwealth and will be available for all court proceedings. The witness states that he/she arrived at the apartment and found the front door unlocked and all the lights in the apartment were turned off. The witness turned on the foyer light and observed blood on the floor of the hallway. As the witness continued into the apartment he/she found the decedent, Carol Ambruster 69/W/F inside the kitchen area with multiple stab wounds to the head. The witness left the apartment and found Witness #2, who is known to the Commonwealth and will be available for all court proceedings, and asked him/her to call the police. Medic 24 responded and pronounced the victim at 9:20PM.

On Tuesday, December 10th, 2013, Dr. Osborne, Office of the Medical Examiner, conducted a Post Mortem examination on the remains of the decedent Carol Ambruster and determined that the cause of death was multiple stab wounds to the head and ruled the manner of death a Homicide.

On Thursday, December 12th, 2013, Witness #3, who is known to the Commonwealth and will be available for all court proceedings, was interviewed and he/she stated in summary that on Wednesday, December 4th he/she was employed to do repairs at the Fairfax Apartments located at 5501 Wayne Ave. The repairs were to be done in apartment 207 which is across the hall from decedent's apartment 201. Witness #3 dropped off the employee, identified as Jose Diaz 42/W/L/M, at 8:30PM and gave him keys to enter the building. Witness #3 picked up Diaz at 4:00PM. Diaz didn't return the keys. On Monday, December 9th, Diaz was supposed to meet Witness #3 to do repairs to a house located at 5144 Wayne Ave. In the morning Witness #3 received a text message.

The Fourth Amendment to the Constitution of the United States declares that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. IV. See also Constitution of the Commonwealth of Pennsylvania, Article I, Section 8. Where law enforcement undertakes evidence of criminal wrongdoing, reasonableness generally requires obtaining a warrant. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). The courts have repeatedly made known its strong preference for searches conducted pursuant to warrants. *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014); *Commonwealth v. Leed*, 646 Pa. 602, 186 A.3d 405 (2018).

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v.*

*Johnson*, 615 Pa. 354, 42 A.3d 1017, 1031 (2012) (quoting *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010); *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352, 357 (1972)). When considering an affidavit of probable cause, the test applied by the issuing authority is a totality of the circumstances one, requiring the magistrate to "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit…including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Johnson, supra* (quoting *Commonwealth v. Sherwood*, 603 Pa 92, 982 A.2d 483, 503 (2009), *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 537 (2001)). A review of the affidavit clearly establishes, by a preponderance of the evidence, that the search warrant for the defendant's residence was properly supported by probable cause and described the items to be seized with the requisite specificity.

Diaz contends that the application wrongly identifies the address of the premises to be searched and that as a result the search warrant fails and any evidence obtained as a result thereof should have been suppressed. Searches are required to describe with particularity the person or place to be searched. Pennsylvania Rule of Criminal Proceedure 206. Such warrants however need to be read in a common sense fashion and should not be invalidated by hyper-technical interpretations. *See Commonwealth v. Leed*, 646 Pa. 602, 186 A.3d 405, 415 (2018); *Commonwealth v. Belenky*, 777 A.2d 483, 486 (Pa.Super.2001); *Commonwealth v. Carisle*, 517 Pa. 36, 534 A.2d 469, 472 (1987).

This issue has been addressed numerous times by our courts. In *Commonwealth v. Belenky*, 777 A.2d 483 (Pa.Super.2001):

> "On January 30, 1999, a confidential informant advised Philadelphia Police Officer Robert Friel that drugs were being sold from 4252 Salem Street, Apartment Four. Officer Friel and the informant

13

went to what they believed to be this address. Apartment Four is accessible from an alley connecting Salem Street and Frankford Avenue, is the same color as the building fronting Salem Street, and is identified only by "APT 4" painted next to the door. They knocked on the door and were admitted by appellant, who asked what they needed. The informant answered "two," and Officer Friel gave appellant ten dollars. Appellant took the money and gave the informant two packets of cocaine.

Based on this sale, Officer Friel obtained a search warrant for the premises, which he described as 4252 Salem Street, Apartment Four. He executed the warrant February 2, 1999 at the same alleyway apartment in which he met appellant three days earlier, and found appellant with packets of heroin and cocaine. Officer Friel also found several bills addressed to appellant at Apartment Four, 4251 Frankford Avenue, not 4252 Salem Street, what the officer had taken to be a single building between the two streets was in fact two buildings, and Apartment Four was part of the building fronting Frankford Avenue." *Id.* at 485.

Our Superior Court found that there was no question that probable cause existed for the issuance of a search warrant – no ambiguity about where the crime had taken place. The police officer obtained a warrant after buying cocaine from the defendant inside his apartment. There was no doubt that the apartment described in the affidavit was the same apartment the officer searched. The only difference was the incorrect address. The court ruled that the error did not mislead the magistrate in assessing the probable cause, did not impede the policeman's assessment of the proper place to be searched, nor hamper the reviewing court's ability to determine the scope of the search. The search was not a general or exploratory search but one described with particularity but the incorrect address. The court found that the wrong address did not invalidate the warrant and that the trial court correctly refused to suppress the evidence. *Id.* at 487.

Likewise, in *Commonwealth v. Washington*, 858 A.2d 1255 (Pa.Super.2004):

"Officer Strobel applied for and was granted a search warrant for 123 West Locust Way, which he believed to be Appellant's address based on his investigation. Only when Officer Strobel...executed the search warrant at Appellant's apartment did they learn

14

from Appellant himself that the warrant specified the incorrect address and that the actual address of the apartment in question was 123 West Tenth Avenue, rear, although Appellant conceded at the suppression hearing that the entrance to his apartment was located on West Locust Way." *Id.* at 1256.

The Superior Court upheld the lower court's denial of the motion to suppress in that there was no ambiguity about the location of the residence to be searched and that criminal activity was afoot. The appellate court further found that in light of the ample evidence presented, the police knew exactly the residence they intended to search, having been there twice before to make two controlled buys of narcotics that the particularity requirement had not been violated by the incorrect address and the evidence properly not suppressed. *Id.* at. 1258.

In the same way, our Supreme Court found that an applicant who mistakenly described a canine sniff of the premises as March 21, 2013, rather than March 21, 2014, the actual date of the detection, did not invalidate the search warrant. The Supreme Court held that "where the substance of an affidavit, read as a whole, evidences that there is a substantial likelihood that a specific paragraph contains an error, such that any reasonable possibility that the police will act without the requisite probable cause is eliminated, the error will not be viewed in isolation and the warrant will be deemed valid, as long as the probable cause affidavit is otherwise sufficient." *Commonwealth v. Leed*, 646 Pa. 602, 620, 186 A.3d 405, 416 (2018). See also *Commonwealth v. Giambrone*, 183 Pa.Super. 283, 130 A.2d 254 (1957) (Search warrant not defective because address was changed from 106 to 108 DeKalb Street).

In the case at bar, the search warrant identified 135 West Hansberry as the residence of the defendant and his wife, when the correct address was 138 West Hansberry. The affiant testified that prior to applying for the search warrant, he had been to the defendant's residence and seen both Diaz and his wife in front of their residence a few days before the application, that he had

15

participated in the execution of the warrant at the same address he had seen appellant and his wife, and that the wrong address number listed on the application for the search warrant was merely a mistake. The search warrant was supported by probable cause with facts and circumstances within the affiant's knowledge and of which he had reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that a search should be conducted. *See Commonwealth v. Johnson*, 615 Pa. 354, 380, 42 A.3d 1017, 1031 (2012); *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010); *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352, 357 (1972). Clearly this case falls within the purview of *Belenky, Washington, Leed* and *Giambrone, supra,* and the suppression court properly denied the motion to suppress.

### *Illegal Arrest*

Finally, the defendant contends that the seizure of his shoes and statement to the police was the product of an illegal arrest and should therefore should have been suppressed. On December 12, 2013, Diaz was taken to the Homicide Division of the Philadelphia Police Department. Appellant contends that this was an illegal arrest. The testimony revealed that Mr. Diaz agreed to accompany the police to their headquarters in an unmarked police car; that his wife was allowed to accompany him, although in a different police vehicle; after securing their residence and that no officer was in uniform or ever had their guns drawn. Diaz was placed in an interview room, where he had the option of either removing his shoes or taking out the laces. Mr. Diaz opted to remove his shoes and placed them outside the interview room. Detective Francis Kane testified that at that time he saw that the soles of the appellant's boots had a size eight on the bottom. The defendant made a statement to the police and was released on December 13th. Diaz was not cuffed when in the interrogation room and did not indicate he wanted to leave. (N.T. 6-5-2017, pp. 7-37). Clearly

16

the Suppression Court's factual findings were supported by the record and the court did not mis-apply the law. That court's finding Detective Kane to be credible is well-supported in the record. Accordingly, the judgment of sentence of this court should be affirmed.

BY THE COURT:

Date: **November 20, 2019**

J. SCOTT O'KEEFE, J.

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL TRIAL DIVISION

Vs. : 3044 EDA 2019

JOSE DIAZ : CP-51-CR-0003429-2014

## Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney:     Gina A. Amoriello, Esquire
1515 Market Street
Suite 1200
Philadelphia, PA 19102

Type of Service:     ( ) Personal (**X**) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:     Lawrence Jonathan Goode, Esquire
Chief – Appeals Division
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107-3499

Type of Service:     ( ) Personal ( ) First Class Mail (**X**) Interoffice ( ) Other, please specify .

Date: November 20, 2019

_Allison M. O'Keefe_
Allison M. O'Keefe, Law Clerk

18